IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:16-cr-405-SI-07 |
| v. | **ORDER** |
| **MARCIAL AGUIRRE**, | |
| Defendant. | |

Billy J. Williams, United States Attorney, and Kemp L. Strickland, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Ave., Suite 600, Portland, OR 97204-2902. Of Attorneys for United States of America.

Marcial Aguirre. *Pro se*.

**Michael H. Simon, District Judge.**

Marcial Aguirre, *pro se*, moves under 28 U.S.C. § 2255 to vacate his 2018 conviction and sentence for conspiracy to distribute methamphetamine and remand for trial. ECF 429. Although he pleaded guilty, Mr. Aguirre contends that he was denied his constitutional right to effective assistance of counsel before both the district court and on appeal. For the reasons that follow, the motion is DENIED.

### STANDARDS

**1.  28 U.S.C. § 2255**

Section 2255 of Title 28 of the United States Code permits a federal prisoner in custody under sentence to move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

PAGE 1 – ORDER

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a). A petitioner seeking relief under § 2255 also must file his or her motion within the one-year statute of limitations.

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (quotation marks omitted) (alteration in original). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

If a court denies a habeas petition, the court may issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see* 28 U.S.C. § 2253(c)(2). Although the petitioner need not prove the merits of his case for the court to issue a certificate of appealability, the petitioner must show "something more than the

absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (quotation marks omitted).

### 2. Ineffective Assistance of Counsel

The federal law governing claims of ineffective assistance of counsel is stated in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A challenger must prove both: (1) that counsel's performance was deficient; and (2) that there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688.

Under the first prong of *Strickland*, for counsel's performance to be constitutionally deficient, it must fall below an objective standard of reasonableness. *Id.* A "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id*. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). "[S]trategic choices made after thorough investigation of law and facts" by attorneys "are virtually unchallengeable." *Miles v. Ryan*, 713 F.3d 477, 490 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 690-91).

Under the second prong of *Strickland*, prejudice is established when there is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a convicted defendant must satisfy both prongs of the *Strickland* test, failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 697 (explaining that it is unnecessary for a court evaluating the merits of

PAGE 3 – ORDER

an ineffective assistance claim to analyze the components of the applicable test in any particular order or to evaluate both components if the petitioner fails to carry his burden as to one aspect of the test).

## BACKGROUND

After Mr. Aguirre entered a plea of guilty to conspiracy to distribute methamphetamine, the Court sentenced him to a term of imprisonment of 135 months. Through wiretaps, federal agents learned that Mr. Aguirre communicated with co-defendants to coordinate shipments of methamphetamine from California to Oregon. Law enforcement officers followed Mr. Aguirre from California to Oregon and watched as he met with co-defendants to receive drug proceeds. The officers arrested Mr. Aguirre returning to California and seized approximately $75,000 in drug proceeds.

The government charged Mr. Aguirre with multiple counts of possession with intent to distribute controlled substances and conspiracy with intent to distribute controlled substances. Mr. Aguirre pleaded guilty to conspiring to distribute more than 4.5 kilograms of methamphetamine, and the government dismissed the remaining counts. In Mr. Aguirre's plea agreement, the parties agreed that Mr. Aguirre's conduct placed his Base Offense Level at a 38. The government sought (and later received) an upward adjustment based on Mr. Aguirre's role as an organizer and leader in the offense. Mr. Aguirre sought (and later received) certain sentencing guideline reductions. In his plea agreement, Mr. Aguirre agreed to waive some of his rights to appeal or to collaterally challenge his conviction or sentence but preserved his right to collaterally challenge his conviction and sentence based on a claim of ineffective assistance of counsel.

Mr. Aguirre's advisory guidelines sentencing range after adjustments was 324-405 months imprisonment. The U.S. Probation Office recommended a sentence of 210 months, and

the government recommended a sentence of 151 months. Mr. Aguirre argued for a sentence of no more than 120 months. The Court sentenced Mr. Aguirre to 135 months imprisonment, followed by five years' supervised release.

Mr. Aguirre was represented through his plea hearing and sentencing by his retained California attorney Mr. Jesse J. Garcia, assisted by local Oregon counsel. ECF 111, 116, 117, 290, and 347. In his pending motion, Mr. Aguirre now contends that Mr. Garcia did not pursue any discovery or file any pretrial motions in this matter. Mr. Aguirre also asserts that Mr. Garcia refused to share with Mr. Aguirre any of the discovery he obtained from the government and would "yell" at Mr. Aguirre when asked about the government's discovery. ECF 430 at 2. Mr. Aguirre also states that Mr. Garcia "failed to procure a favorable plea agreement offer" and deprived him of his right to make a well-informed decision about whether to accept the plea offer or go to trial. *Id.* Mr. Aguirre alleges that Mr. Garcia presented him with the government's plea offer only five minutes before the plea hearing and told him that he had to sign the plea offer. *Id.* Finally, Mr. Aguirre contends that Mr. Garcia falsely told him that the government would not seek an upward adjustment based on Mr. Aguirre's role as a leader if he signed the plea offer. *Id.*

Mr. Garcia withdrew from the case in September 2018, shortly after filing an appeal for Mr. Aguirre. ECF 355. In October 2018, the Court appointed Matthew Schindler as Mr. Aguirre's appellate counsel. ECF 359. Mr. Schindler reviewed the case materials and potential avenues of appeal. *See* Ninth Circuit Case No. 18-30209, Dkt 10 ("Voluntary Dismissal"). Mr. Schindler met with Mr. Aguirre in prison five times. *Id.* Despite these efforts, Mr. Schindler concluded that Mr. Aguirre did not have a meritorious claim for ineffective assistance of trial counsel, in large part based on the fact that he received a favorable plea agreement that benefitted him significantly. *Id.* Mr. Aguirre contends that after Mr. Schindler

explained this to him, Mr. Aguirre refused to sign the form consenting to voluntary dismissal of his appeal. ECF 430 at 4. Mr. Aguirre asserts that Mr. Schindler filed a motion to voluntarily dismiss the appeal without Mr. Aguirre's signature or consent. Mr. Aguirre's signature, however, appears on page four of the Voluntary Dismissal. *See* Voluntary Dismissal at 4.

## DISCUSSION

### A. Ineffective Assistance of Trial Counsel

The Court finds that Mr. Aguirre did not receive ineffective assistance of counsel during the pretrial motion phase, and the record does not establish prejudice. As noted, Mr. Aguirre alleges that his retained attorney Mr. Garcia refused to share the government's discovery with him and would "yell" at him when asked. Mr. Aguirre also faults Mr. Garcia for failing to file pretrial motions (including failing to move to "suppress phone recorded conversations") and failing to "investigate the case to mitigate [Mr. Aguirre's] involvement." ECF 429 at 5. But Mr. Aguirre does not argue that there is a "reasonable probability" that the outcome of the case would have been different had Mr. Garcia followed through on any of these avenues. For example, Mr. Aguirre does not explain on what basis Mr. Garcia should have moved to suppress the recorded telephone conversations or dispute the government's position that law enforcement officers properly obtained the recordings "through ongoing investigation and search warrants." ECF 441 at 11. Mr. Aguirre also does not specify any other pretrial motions Mr. Garcia should have filed, nor does he argue how any such motion could have succeeded.

Further, Mr. Aguirre cannot show that he was denied the right to counsel during plea negotiations or his plea guilty. According to Mr. Aguirre, Mr. Garcia allegedly presented the written plea agreement to Mr. Aguirre only five minutes before the plea hearing and told Mr. Aguirre that he had to accept it. Mr. Aguirre signed the plea agreement, and the Court

engaged in an extensive plea colloquy with Mr. Aguirre. See ECF 369 (Transcript from Plea Hearing on March 19, 2018).

During the plea colloquy, Mr. Aguirre stated, under oath, that he discussed with his attorney the charges, his options and alternatives, and the consequences of a guilty plea. ECF 369, at 4-5, 8. The Court asked Mr. Aguirre whether all questions that he asked Mr. Garcia had "been answered to your satisfaction," and Mr. Aguirre answered "yes. *Id*. at 8. Mr. Aguirre also told the Court that he was "fully satisfied with the legal counsel, the representation, the advice that has been given to [him] in this matter so far by [his] attorney, Mr. Garcia." *Id*. Mr. Aguirre added that he signed the plea petition and plea agreement letter and understood the terms of the plea agreement. *Id*. at 9. He further stated that no promises not contained in the written plea agreement had been made to him to try to get him to accept the plea agreement or to plead guilty. *Id*. at 9-10. The Court also told Mr. Aguirre that he did not have to plead guilty and that he could plead not guilty and have a jury trial. *Id*. at 17-18. In addition, the attorney for the government explained to the Court, in the presence of Mr. Aguirre, that the plea negotiations had been protracted and that an earlier written draft plea agreement had been revised "for the the current plea agreement."[1] Id. at 19. Mr. Aguirre then entered a knowing and voluntary plea of guilty, which the Court accepted. *Id.* at 22-23.

"In order to show prejudice regarding a plea, a defendant must generally show that, absent his counsel's errors, he would have gone to trial rather than have pled guilty." *United States v. Roberts*, 5 F.3d 365, 370 (9th Cir. 1993). Mr. Aguirre has made no such showing. Mr. Aguirre's statements at the plea hearing carry a "strong presumption of truth." *Munth v.*

---

[1] This appears to explain why Mr. Aguirre might have only seen the revised written plea document five minutes before the plea hearing.

*Fondren*, 676 F.3d 815 (9th Cir. 2012) (citations omitted); *see also United States v. Ross,* 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."). Mr. Aguirre provides no evidence other than his own affidavit to rebut that presumption.

Mr. Aguirre also argues that Mr. Garcia "failed to procure a 'favorable plea agreement.'" ECF 429 at 4. As noted, however, the U.S. Probation Office recommended a 210-month sentence, and the government recommended a sentence of 151 months. Mr. Aguirre asked for a sentence of 120 months, which was the mandatory minimum. Mr. Aguirre's argument comes down to the assertion that Mr. Garcia's inadequate performance caused the Court to sentence Mr. Aguirre to 135 months, rather than the mandatory minimum of 120 months. But Mr. Aguirre presents no evidence to support that assertion, nor does he address the fact that a sentence of 135 months is already well below the guidelines range of 324-405 months. *Cf. Glover v. United States*, 531 U.S. 198, 202 (2001) (addressing a challenge to the "sentencing calculation itself."). The sentence imposed was 75 months lower than the recommendation from the Probation Office, 16 months lower than the government's recommendation, and only 15 months higher than the sentence of Mr. Aguirre's next-most-culpable co-defendant, who received the mandatory minimum. Because Mr. Aguirre received a sentence well below both the guidelines range and the government recommendation, he has not shown "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## B. Ineffective Assistance of Appellate Counsel

Mr. Aguirre further argues that his appellate counsel, Mr. Schindler, performed deficiently because Mr. Schindler never filed an opening appellate brief and submitted a motion to voluntarily dismiss the appeal supposedly without Mr. Aguirre's consent. But Mr. Aguirre's assertion that Mr. Schindler submitted the voluntary dismissal motion without Mr. Aguirre's

signature is a "conclusory statement" unsupported—and indeed contradicted—by the record. *Hearst*, 638 F.2d at 1194. Mr. Aguirre's signature appears on page four of the motion for Voluntary Dismissal of Mr. Aguirre's appeal. "When viewed against the record," which includes his signature on the Voluntary Dismissal, Mr. Aguirre's claim for ineffective assistance of counsel is "patently frivolous." *Withers*, 638 F.3d at 1062 (quoting *Schaflander*, 743 F.2d at 717).

The Court finds no deficiencies in the other aspects of Mr. Schindler's performance. Mr. Schindler was concerned about Mr. Garcia's "repeated failures to provide basic information to his client," so Mr. Schindler conscientiously examined the record and met with Mr. Aguirre in person five times. Mr. Schindler engaged in a "thorough investigation of law and facts" but concluded there were no reasonable grounds for appeal because Mr. Aguirre's trial counsel obtained a favorable plea deal. *Miles*, 713 F.3d at 490.

The Court does not fault the process by which Mr. Schindler arrived at that conclusion, even if Mr. Aguirre now disagrees with the conclusion itself, and Mr. Aguirre has not established prejudice. Mr. Schindler explained that he filed no opening brief because there was "simply nothing [] to appeal." Mr. Aguirre points to no evidence or legal arguments overlooked by Mr. Schindler that might have supported a successful appeal, had Mr. Schindler filed an opening brief. Mr. Aguirre has not shown that "but for [Mr. Schindler's] unreasonable failure . . . he would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

## CONCLUSION

Mr. Aguirre fails to meet his burden of showing that he received ineffective assistance of counsel either before the district court or on appeal. Accordingly, Mr. Aguirre's Motion to Vacate or Correct Sentence under 28 U.S.C. 2255 (ECF 429) is DENIED. The Court declines to

issue a Certificate of Appealability on the basis that Petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED**.

DATED this 20th day of June, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge